## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**TIMOTHY ALLEN**                                                              **PLAINTIFF**

**v.**                                                     **CIVIL ACTION NO. 2:19-cv-30-TBM-MTP**

**VAKSMAN LAW OFFICES, P.C.**                                    **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This is a legal malpractice case arising out of the attorney-client relationship between the Defendant, Vaksman Law Offices, P.C., and the Plaintiff, Timothy Allen. The sole issue before this Court, however, is whether Allen electronically signed a retainer agreement on November 16, 2010. It is undisputed that if Allen signed the retainer agreement, then a valid and binding arbitration agreement exists between the parties. Pursuant to the Fifth Circuit's judgment on October 19, 2020, the Court conducted an evidentiary hearing to determine a narrow question: whether Vaksman Law has shown, by a preponderance of the evidence, that Allen electronically signed the retainer agreement on November 16, 2010. The more specific factual question is whether Allen electronically typed his name into a text box in 2010, which in turn, inserted a form signature on the electronic retainer agreement, thus demonstrating his execution of the retainer agreement.

Allen claims that he did not electronically sign the retainer agreement. To refute Allen's contention, Vaksman Law puts forth three key pieces of evidence. The first piece of evidence is an "Adobe Audit Trail," which illustrates the electronic history of the retainer agreement from its creation to its execution. The Adobe Audit Trail — which calculates time in Greenwich Mean

Time — shows the following: Vaksman Law emailed the retainer agreement to Allen's email address on November 16, 2010, at 1:23 a.m. (GMT); the retainer agreement was viewed from Allen's email address at 5:29 p.m. (GMT); signed by someone using Allen's email address at 5:32 p.m. (GMT); returned via email to Vaksman Law for signature at 5:32 p.m. (GMT); and the fully executed retainer agreement was sent back to Allen's email address at 5:33 p.m. (GMT). The second piece of evidence is the testimony of Vaksman Law's expert, Michael Kunkel, addressing the Adobe Audit Trail and evidence concluding that, more likely than not, Allen electronically signed the retainer agreement. The third piece of evidence is the testimony of Kenneth Ratley, an attorney previously employed by Vaksman Law and who worked on Allen's case. Ratley testified that he explained the terms of the retainer agreement to Allen during their first phone call. Ratley created the retainer agreement, sent it to Allen's email address, and received an electronically signed copy from Allen's email address. Based on the preponderance of the evidence, the Court finds that Allen electronically signed the retainer agreement. A valid and binding arbitration agreement therefore exists between the parties. Accordingly, the parties are ordered to arbitrate this matter pursuant to the binding arbitration agreement.

Also, the Court took certain objections under advisement at the hearing. Vaksman Law filed a Motion to Exclude [148] the testimony of Allen's expert, Arturo Drummond, and certain proposed exhibits offered by Allen. Also, Allen sought to exclude Vaksman Law's proposed exhibit D-33, a document purporting to show that Allen's home IP address was the same IP address shown on the Adobe Audit Trail. For the reasons discussed below, Vaksman Law's Motion to Exclude is granted in part and denied in part. Allen's request to exclude is granted. These rulings do not

change the outcome: Vaksman Law demonstrated, by a preponderance of the evidence, that Allen electronically signed the retainer agreement.

## I. BACKGROUND AND PROCEDURAL HISTORY

In April 2010, an offshore drilling platform, the Deepwater Horizon, exploded and caused an oil spill in the Gulf of Mexico. At the time of the explosion, Timothy Allen was an account executive for OpenTable, Inc., a company providing services to restaurants across the Gulf Coast region. After the Deepwater Horizon oil spill, Allen's client base allegedly diminished because of the decline in tourism across the region. In August 2010, OpenTable terminated Allen's employment.

Following his termination, Allen entered into an attorney-client relationship with Vaksman Law to represent him in a claim for damages as a result of the Deepwater Horizon oil spill. On November 16, 2010, Vaksman Law emailed a retainer agreement to Allen which was electronically executed from Allen's email address that same day. The retainer agreement contains an arbitration clause.

On February 20, 2019, years after the retainer agreement at issue, Allen filed his Complaint in this Court. Allen alleges that Vaksman Law failed "to timely and properly file suit on his behalf in either state or federal court." Complaint [1], ¶ 32. In his Complaint, Allen asserts five claims against Vaksman Law: negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and negligent infliction of emotional distress.

On July 15, 2019, Vaksman Law filed a Motion to Dismiss and, Alternatively, to Stay Proceedings and Compel Arbitration [60]. Allen filed his Response in Opposition [65] on August 12, 2019, denying that he signed the retainer agreement. On November 25, 2019, the Court entered

its Memorandum Opinion and Order [90] denying Vaksman Law's Motion. Based on the evidence presented at that time, and based on the applicable standard of review governing the motion to dismiss, the Court could not conclude that a valid arbitration agreement existed between the parties. *See* [90] (explaining that "a 12(b)(6) motion is not the appropriate mechanism" to resolve factual disputes).

On December 13, 2019, Vaksman Law appealed to the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit affirmed the Court's judgment on October 19, 2020, recognizing the district court found only that Allen plausibly denied the existence of a valid arbitration agreement. The Fifth Circuit recognized that "Allen raised an issue of fact, albeit slim, by unequivocally denying, in his (self-serving) affidavit, the formation of an arbitration agreement." *Allen v. Vaksman Law Offs., P.C.*, 822 F. App'x 315, 316 (5th Cir. 2020). Upon remand, the Court scheduled an evidentiary hearing to determine whether, by a preponderance of the evidence, a valid arbitration agreement exists between the parties.

On December 18, 2020, this matter was reassigned from Senior District Judge Starrett's docket to the undersigned's docket, and the evidentiary hearing was reset for February 23, 2021. On February 9, 2021, Vaksman Law filed a Motion to Exclude [148] the testimony of Allen's expert, Arturo Drummond, and certain proposed exhibits of Allen. However, this matter was not fully briefed until the evening before the hearing. Accordingly, the Court took Vaksman Law's Motion under advisement and permitted Allen's expert, Arturo Drummond, to testify at the hearing. During the hearing, Vaksman Law offered into evidence a new exhibit (D-33) that had previously not been disclosed. The Court took under advisement Allen's objection to Vaksman Law's proposed exhibit D-33, a document purporting to show that Allen's home IP address was

4

the same IP address shown on the Adobe Audit Trail. At the conclusion of the hearing, the parties requested the opportunity to file post-hearing briefs which the Court allowed. Vaksman Law filed its post-hearing brief on March 9, 2021, Allen filed his post-hearing brief on March 29, 2021, and Vaksman Law filed its reply to Allen's post-hearing brief on April 7, 2021. The Court will first address the substantive question of whether Allen electronically signed the retainer agreement at issue and will then turn to the pending objections as these objections do not change the result.

## II. THE RETAINER AGREEMENT

### A. The Evidence presented at the hearing.

At the hearing on this matter, the Court heard testimony from five witnesses. The Defendant's witnesses included (1) Kenneth Ratley, former attorney at Vaksman Law Offices who worked on Allen's case, (2) Robert Vaksman, President and managing attorney at Vaksman Law Offices who handled the firm's IT, (3) Plaintiff Timothy Allen, adversely, and (4) expert, Michael Kunkel. The Plaintiff called an expert: Arturo Drummond.

Kenneth Ratley was the first witness to testify, providing his recollection on the formation of the attorney-client relationship. Hearing Transcript, pg. 12. During his time at the Vaksman Law firm, Ratley worked on Allen's Deepwater Horizon claim. *Id*. In fact, Ratley testified that he was the attorney who first called Allen to discuss his potential claim after Allen entered his contact information into a website manned by Vaksman Law for potential BP claimants seeking representation.[1] *Id*.  During this initial call, Ratley testified that he discussed the electronic retainer agreement with Allen, and that Allen agreed to the terms. *Id*. at pgs. 13, 19, 21, 49. According to Ratley, he also explained that the retainer agreement would be sent to the Comcast email address

---

[1] Ratley explained that Vaksman Law received an internet form that Allen completed which expressed his interest in pursuing a claim against BP as a result of the Deepwater Horizon oil spill. Hearing Transcript, pg. 12.

that Allen provided via Adobe Sign (Allen's email address would be entered by Ratley into the Adobe Sign computer program which would send the retainer agreement to Allen's email address); Ratley also described to Allen how to sign and return the electronic retainer agreement in Adobe Sign. *Id.* at pg. 19. After Ratley sent the retainer agreement to Allen's Comcast email address, and after Allen's email electronically received the retainer agreement, Ratley testified that he saved the executed retainer agreement to his file. *Id.* at pg. 20. Had he not received the signed retainer agreement, Ratley testified that he would not have drafted and submitted Allen's Deepwater Horizon claim, nor would Ratley have proceeded with the representation by filing a GCCF claim or requested documentation from Allen in support of the claim. *Id.* at pgs. 48, 50, 51, 52. Instead, Ratley testified that his next communication with Allen would have been to follow up and make sure Allen was still interested in pursuing a claim, and if so, to remind Allen about signing the retainer agreement. *Id.* at pg. 50. Throughout his testimony, Ratley repeatedly testified that he had successful communications with Allen via the Comcast email address that Allen initially provided. *Id.* at pgs. 36, 37, 41, 51.

The next witness who testified was Robert Vaksman, President and managing attorney at Vaksman Law. *Id.* at pg. 69. In addition to these titles, Mr. Vaksman testified that he is responsible for handling all IT issues at the firm, including creating the Adobe accounts. *Id.* at pgs. 69-70. During his testimony, Mr. Vaksman explained the process of electronically signing a document in Adobe Sign. *Id.* at pgs. 70-71. According to Mr. Vaksman, someone must first choose a document to send and initiate a signing request by inputting the email address of the specific signees. *Id.* Mr. Vaksman explained that a signing "request is made to the party that is seeking to engage [the firm]." *Id.* at pg. 71. After a signing request is made, the firm waits for the party to sign, "and then

upon their signature, [the firm signs] the agreement, or in this case, I have signed the agreement." *Id*. Mr. Vaksman testified that to sign the document, the party types their name into the signature box and Adobe chooses a font for their signature. *Id*. at pgs. 71-72.

Vaksman Law next called Timothy Allen adversely, and Allen stated that he did not electronically sign the retainer agreement at issue. *Id*. at pgs. 87, 90, 94, 96. While he testified that he did not electronically sign the retainer agreement, he testified that he *did* want to hire Vaksman Law. *Id*. at pg. 87. Allen explained that he was under the impression that Vaksman Law was representing him after the initial telephone call with Ratley. *Id*. at pgs. 88, 94, 100, 109. He testified that after this initial conversation, he communicated with Ratley over the phone and via email through his Comcast email account. *Id*. at pgs. 99-101. Allen testified that throughout the representation, the communications with Ratley via his Comcast email account were successful, and that he did not believe there were any issues with messages being sent or received. *Id*. at pg. 101. Allen also revealed that while he often left his computer open, he did not log out of it often, and he never authorized anyone to sign on his behalf. *Id*. at pgs. 90-91.  In further support of his position that he did not electronically sign the retainer agreement, Allen asserts that his practice was to print, sign, and efax documents. *Id*. at pg. 103.

Allen also testified that approximately one year after retaining Vaksman Law, he moved to New Orleans and stopped using his Comcast email address. *Id*. at pgs. 101-102. According to Allen, he attempted to save all emails related to his Deepwater Horizon claim before switching over to his Gmail email address. *Id*. at pgs. 102, 116. Allen testified that "this is the only legal case I've ever been involved in, so I thought it would be important to hold on to some form of copy of those (emails)." *Id*. at pg. 116. He further testified that while it was not his practice to delete emails, he

did not see the retainer agreement when he searched his Comcast email account for legal documents. *Id.* at pgs. 92, 95, 105. Finally, Allen testified that he no longer has access to his Comcast account, his computer, or cell phone from that time. *Id.* at pgs. 102, 105-106. In fact, his computer has been destroyed. *Id.* at pgs. 105-106.

The Court then heard from Vaksman Law's expert witness, Michael Kunkel, who specializes in computer forensics and cyber investigations. *Id.* at pg. 122. Kunkel testified the retainer agreement was "digitally signed on November 16th by a person with access to the email account timothyallen601@comcast.net." *Id.* at pgs. 127, 143. Kunkel concluded that because Allen's sworn interrogatories state that Allen was typically the only person with access to his Comcast email account, it was most likely Allen who electronically signed the retainer agreement at issue. *Id.* at pgs. 145, 150, 151, 153, 155, 162, 163.[2] Kunkel further opined that only someone with access to Allen's Comcast email account could sign the retainer agreement. *Id.* at pgs. 151-152.

Finally, the Court heard from Allen's expert witness, Arturo Drummond, who specializes in cyber forensics and digital forensics. *Id.* at pgs. 172, 179. Drummond's testimony involved theoretical discussions in the field of cyber traffic protocol and cryptography. *Id.* at pg. 184. Drummond discussed archaic network topology, such as token rings (technology used to build local area networks), and proprietary software security known as private key (used to encrypt and decrypt data). *Id.* at pgs. 184-185. Drummond also explained the topics of cryptographic hash, which is used to authenticate network connections, and DomainKey, which is an email authentication method to screen email spoofing (sending an email from a forged sender address). *Id.* at pgs. 181, 182, 188. Drummond admitted that evidence of the IP address used by Mr. Allen

---

[2] The Court also heard lengthy testimony regarding proposed exhibit D-33. Because the Court grants Allen's request to exclude this document, Kunkel's testimony related to this document has not been considered by the Court.

and the IP address leased to Mr. Allen by Comcast likely did not still exist due to Comcast's record keeping. *Id.* at pgs. 185, 186. Drummond opined that he could not conclusively say that Allen signed the retainer agreement. *Id.* at pg. 191.

Allen asserts that "Vaksman Law has failed to authenticate the electronic signature as the act of Mr. Allen by a preponderance of the evidence." [170] at pg. 10. Allen also attacks the credibility of the Adobe Audit Trail evidence, arguing that it "is not conclusive as to the actions that took place, and by whom, from origination to conclusion of the alleged document." [170] at pg. 12. Throughout this action, Allen has also argued that he rarely deleted emails, and that when he changed his email address from Comcast to Gmail, he saved all documents related to this lawsuit. Allen claims that despite searching for documents that could relate to this lawsuit, the first time he saw the retainer agreement at issue was attached as an exhibit to a pleading in this lawsuit.

Defendant Vaksman Law asserts that, based on a preponderance of the evidence, Allen executed the retainer agreement. Vaksman Law relies heavily on the Adobe Audit Trail, which illustrates the electronic history of the retainer agreement from its creation to its execution. The Adobe Audit Trail shows the following: multiple emails exchanged between Allen and Mr. Vaksman regarding the retainer agreement; the retainer agreement was sent to Allen's Comcast account at 1:23 a.m. (GMT) on November 16, 2010; the retainer agreement was viewed from Allen's email address at 5:29 p.m. (GMT), executed at 5:32 p.m. (GMT), and returned from Allen's email address to Mr. Vaksman. *Id.* The Adobe Audit Trail also shows that Vaksman Law reviewed the executed retainer agreement at 5:32 p.m. (GMT), it was signed on behalf of Vaksman Law at 5:33 p.m. (GMT), and the fully executed retainer agreement was sent to Allen's email address at 5:33 p.m. (GMT).

Allen admits that he successfully communicated with Vaksman Law's attorneys through his Comcast email address without issue — both before and after the retainer agreement was electronically signed. Since Allen testified that he checked his Comcast account multiple times a day, Vaksman Law submits that it is improbable that he remained unaware of the retainer agreement. Vaksman Law also asserts that in Allen's deposition testimony, hearing testimony, and in two of his complaints, he admits the existence of a potential written retainer agreement. According to Vaksman Law, based on the evidence presented, Allen electronically signed the retainer agreement, and a valid and binding arbitration agreement exists between the parties. Vaksman Law asserts that Ratley's testimony regarding the retainer agreement and his communications with Allen after receiving the executed retainer agreement not only prove that Allen signed the retainer agreement, but that he also ratified all substantive terms.

**B.  The evidence demonstrates by a preponderance of the evidence that Allen electronically signed the retainer agreement and there is a valid agreement to arbitrate.**

Mississippi has adopted the Uniform Electronic Transactions Act which provides that a "signature may not be denied legal effect or enforceability solely because it is in electronic form," and that a "contract may not be denied legal enforceability solely because an electronic record was used in its formation." MISS. CODE ANN. § 75-12-13. The Uniform Electronic Transactions Act also provides that an "electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." MISS. CODE ANN. § 75-12-17.

Although Allen denies that he electronically signed the retainer agreement, Allen's denial is insufficient. Indeed, Vaksman Law provided a copy of the retainer agreement bearing Allen's electronic signature from Adobe, in combination with the Adobe Audit Trial. And, in Allen's deposition testimony, hearing testimony, and in two of his complaints, he recognizes the existence of a potential written retainer agreement.[3] Significantly, Allen has stopped short of claiming that the retainer agreement was forged. When asked at the hearing if Allen was taking the position that the retainer agreement was forged, Plaintiff's counsel responded that "we are taking the position that he didn't sign the agreements. And so whoever would have signed it, it's not his signature." Hearing Transcript, 6:15-20. Apart from the mere suggestion in his prior affidavit, Allen made no argument at the hearing or throughout his briefing that the retainer agreement was forged. *See* [156]; [170].

Vaksman Law provided evidence of the Adobe Audit Trail which includes date and time stamps of emails sent and received between Allen and Vaksman Law. The Adobe Audit Trail shows that multiple emails were sent to Allen's Comcast email account relating to the retainer agreement. In fact, the Adobe Audit Trail shows that the retainer agreement was sent to Allen's Comcast email account, electronically signed, that the electronic signature is attributed to Allen's email address, and that the fully executed document was furnished to Allen. In response, Allen attacks the credibility of the Adobe Audit Trail evidence, arguing that it "is not conclusive as to the actions that took place, and by whom, from origination to conclusion of the alleged document." [170] at pg. 12. Yet, Vaksman Law need not conclusively show that Allen signed the retainer agreement. Instead, Vaksman Law's burden is preponderance of evidence, and the Adobe Audit

---

[3] While it is in the record that a written retainer agreement existed, Allen does not admit having signed the agreement. Hearing Transcript. pg. 118.

Trail persuasively shows a history of the retainer agreement that demonstrates someone with access to Allen's email address electronically signed the retainer agreement just three minutes after viewing the document.

Allen is faced with remembering – ten years later – whether he viewed and allegedly signed a retainer agreement during a three-minute period. Hearing Transcript pgs. 92-94. That being the case, the Adobe Audit Trail is more credible as it shows that the retainer agreement was viewed from Allen's email address at 5:29 p.m. (GMT) and signed from Allen's email address at 5:32 p.m. (GMT). While Allen stated he did not see or find the retainer agreement when he switched from his Comcast email account to his Gmail email account, the Court finds Allen's inquiry in transferring legal emails from his Comcast email account to his Gmail email account unpersuasive. Outside of generally stating he searched for related lawyers and legal documents, Allen does not sufficiently expand upon the search terms used in the transfer or otherwise. Allen's review could have caught the existence of the retainer agreement in his email. In fact, Allen did not testify that he ever searched the term "Adobe" as it was Adobe Sign that actually sent the retainer agreement to his email address. Further, while Allen's general practice may have been to print, sign, and efax documents, this does not alter how Allen may simply not remember that he took three minutes over ten years ago to electronically sign a retainer agreement.

The Court simply finds Kunkel and Ratley's testimony to be more credible. Kunkel determined that Allen had access to the Comcast email account, consistent with Allen's sworn interrogatory submissions. *Id*. at pgs. 145, 150, 151, 153, 155, 162, 163. Relying on the Adobe Audit Trail evidence, Kunkel concluded it was more likely than not that Allen electronically signed the retainer agreement. Ratley testified that he would not have proceeded with the representation of

Allen if he had not received the signed retainer agreement. *Id.* at pgs. 48, 50, 51, 52. The Court finds Ratley's testimony persuasive, specifically that Ratley had successful communications with Allen to explain the retainer agreement to Allen, Ratley sent the retainer agreement to Allen, and he received an electronically signed copy of the agreement from Allen's email.

The Court finds Vaksman Law has demonstrated by a preponderance of the evidence that Allen signed the retainer agreement. Based on the substantive evidence, as well as all the witnesses' testimony, responses, and demeanor – the Court does not find Allen's testimony purporting to show Allen did not sign the electronic retainer agreement credible. *Robson v. D.R. Horton, Inc.*, No. 6:21-cv-719-GAP-LRH, 2021 WL 3914474, at *11 (M.D. Fla. Aug. 12, 2021) (explaining that the court sits as the trier of fact on a motion to compel arbitration and assesses witness credibility issues to determine whether a valid arbitration agreement exists and finding that the plaintiff presented self-serving testimony). The evidentiary hearing revealed that beyond mere denials or innuendo of fraud, Allen does not have evidence to rebut Vaksman Law's collective presentation of evidence. *Lasseigne v. Sterling Jewelers, Inc.*, No. 16-16925, 2017 WL 1788292, at *6 (E.D. La. May 5, 2017) (rejecting plaintiff's claim that she did not electronically sign the arbitration provision as not credible); *Stover-Davis v. Aetna Life Ins. Co.*, No. 1:15-cv-1938-BAM, 2016 WL 2756848, at *5 (E.D. Cal. May 12, 2016) (determining the electronic signature enforceable despite plaintiff's assertion that she does not recall signing the acknowledgement of the arbitration agreement).

Because Allen does not argue that the retainer agreement was forged, his sole argument is that he did not sign the retainer agreement. And, "[a] party should not be able to avoid the enforcement of an arbitration agreement that is otherwise valid by obliquely stating without any supporting proof that it is not a genuine signature." *Walker v. Tao Operating L.L.C.*, No. 1:13-cv-

619, 2014 WL 11904577, at \*7 (E.D. Tex. Aug. 14, 2014) (denying claim that the signature on the arbitration agreement was not the party's due to lack of supporting facts or accusations of fraud to prove that the signature was not authentic); *see also Homes v. Air Liquide USA LLC*, No. H-11-2580, 2012 WL 267194, at \*3 (S.D. Tex. Jan. 30, 2012) (holding that while the facts did not allow complete certainty as to the identity of an electronic signature, the burdened party provided sufficient evidence to have met their burden by a preponderance of evidence to compel arbitration). Accordingly, the Court finds that Vaksman Law has met its burden of establishing, by a preponderance of the evidence, that a valid agreement to arbitrate exists between the parties. *Thick v. Dolgencorp of Tex., Inc.*, No. 4:16-cv-733-ALM, 2017 WL 108297, at \*2 (E.D. Tex. Jan. 11, 2017) (compelling arbitration where no supporting evidence was presented by plaintiff, other than plaintiff stating that she does not recall ever electronically acknowledging the agreement).

### III. VAKSMAN LAW'S MOTION TO EXCLUDE

In its Motion to Exclude, Vaksman Law submits that the testimony and documents authored by Allen's expert, Arturo Drummond, should be excluded pursuant to Rule 26 and Rule 37 of the Federal Rules of Civil Procedure, Rule 702 of the Federal Rules of Evidence, and *Daubert*.[4] The Federal Rules of Civil Procedure provide that a retained expert must produce a report that contains "a complete statement of all opinions the witness will express and the basis

---

[4] Vaksman Law also asserts that Allen's proposed exhibits 2, 4, 5, and 6 should be excluded to the extent that they are offered to prove that Allen's physical "wet" signature does not resemble the electronic signature on the retainer agreement. Allen's proposed exhibit 2 is Vaksman Law's Authorization form depicting Allen's physical wet signature, proposed exhibit 4 is a Power of Attorney Form depicting Allen's physical wet signature, proposed exhibit 5 is a signature page depicting Allen's physical wet signature dated February 19, 2013, and proposed exhibit 6 is a Disclosure form depicting Allen's initials. At the hearing on this matter, the Court addressed Vaksman Law's objections to Allen's proposed exhibits 2 and 6. The Court denied Vaksman Law's objections and admitted Allen's proposed exhibits 2 and 6 into evidence. Vaksman Law's Motion to Exclude as to those exhibits is therefore moot. Additionally, Allen's proposed exhibits 4 and 5 were not offered into evidence at the hearing, and the Court has not considered these exhibits in deciding whether Allen electronically signed the retainer agreement. Hearing Transcript, pg. 120. Vaksman Law's Motion to Exclude Allen's proposed exhibits 4 and 5 is therefore denied as moot.

and reasons for them." FED. R. CIV. P. 26(a)(2)(B). And "[i]f a party fails to provide information

or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information

or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The entirety of Drummond's

purported expert opinion is contained in the last two paragraphs of his two-page expert report:

> Upon review of the documents, I have determined additional time is needed to
> investigate any additional contextual metadata to supplement the information
> provided. Mr. Allen maintains and is adamant he did not sign the purported
> contract. Additional information is needed to provide a proper forensic accounting
> of this matter. Given the ten (10) year gap, much necessary information and data is
> likely entirely unavailable or difficult and timely to track down. No documentation
> currently provided shows the IP address 76.123.175.173 referred to was in fact leased
> to the client's device at the time. Without this additional information, I cannot say
> with any certainty that Mr. Allen was in possession of this device at the time, or that
> this device was provisioned to Mr. Allen's account on the mobile carrier's network.
>
> The e-mail timestamp provided by Adobe Sign is inconclusive. Additional metadata
> from Comcast and the mobile carrier is required to confirm this IP address was in
> use on Mr. Allen's mobile carrier or landline ISP. This data must match the
> transactional logs on Adobe Sign server during the timeframe in question.

[149-1].

"The purpose of Rule 26(a)(2) is to provide *notice* to opposing counsel . . . as to what the

expert witness will testify." *Hill ex rel. Hill v. Koppers, Inc.*, No. 3:03-cv-60-P, 2009 WL 4908836,

at *5 (N.D. Miss. Dec. 11, 2009) (emphasis added) (citations omitted); *See Williams v. State*, No.

14-00154-BAJ, 2015 WL 5438596, at *4 (M.D. La Sep. 14, 2015) (finding the plaintiff failed to

produce an actual summary of the facts and opinions which the witness is expected to testify);

*Shepherd v. GeoVera Specialty Ins. Servs., Inc.*, No. 14–862, 2015 WL 1040452, at *2 (E.D. La. Mar.

10, 2015) (finding that the court has not been presented with a report from the expert that clearly

articulates the opinions he will offer).

The evidence indicates that Drummond's expert report contains little detail to allow the opposing counsel to be prepared for cross-examination. "Neither report stated the expert's anticipated opinion with sufficient specificity to allow [the defendant] to prepare for rebuttal or cross-examination." *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1323 (11th Cir. 2008). "Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (striking expert report that did not satisfy Rule 26(a)(2)(B)(i) because the expert failed to discuss the basis of his conclusion). Rather, Drummond opines beyond the scope of his report into theoretical spheres of cyber traffic protocol and cyber security processes.

Drummond's hearing testimony provided abstract discussions of "token rings" (technology used to build local area networks), and proprietary software security known as "private key" (used to encrypt and decrypt data). Instead of providing the Court with information to rebut the Adobe Audit Trail, Drummond provided innuendo of email fraud regarding "cryptographic hash" (used to authenticate network connections), "DomainKey" (an email authentication method to screen emails), and "spoofing" (sending an email from a forged sender address). Since Allen did not allege email fraud occurred (only alleging he did not electronically sign the retainer agreement), the testimony concerning cryptographic hash, DomainKey, and email spoofing only added speculation concerning allegations that Allen has not made. These discussions did not aid the Court in making factual determinations.

Furthermore, Drummond admits the data needed to prove his position likely no longer exists due to Comcast's record keeping, and Drummond conclusively states that he cannot say whether Allen signed the agreement. Drummond's findings are circular: he appears to state in his

expert report that more information is needed to make a determination to a degree of certainty that Allen was in possession of his computer at the time of execution of the retainer agreement, while maintaining in his testimony the relevant information likely does not exist. *Thomas & Betts Corp. v. New Alberton's, Inc. et. al.*, 915 F.3d 36, 65 (1st Cir. 2019) (finding that district courts do not abuse their discretion when they decline to admit opinion evidence that "is connected to existing data only by the ipse dixit of the expert" or where there is "simply too great an analytical gap between the data and the opinion proffered") (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). Drummond's expert report and testimony are conclusory in nature and show a lack of investigation into whether Allen electronically signed the retainer agreement. Likewise, the brevity of the report did not provide Vaksman Law much opportunity to prepare to cross examine Drummond on his expert testimony that ended up in numerous cyber security topics not contained in the report. To be sure, none of the various technological lingo (crytopgraphy, crytohash, DomainKey, token-rings, etc.) Drummond testified to at length were included in his expert report.  Outside of adamantly *believing* Allen did not electronically sign the retainer agreement, Drummond provided the Court with no factual basis to rebut Vaksman Law's Adobe Audit Trail evidence.

Additionally, not only does his report fail to notify opposing counsel as to what opinions Drummond intended to offer in this matter, his report also lacks his signature in further violation of Rule 26. *Wilson v. Service Companies*, No. 3:16-cv-271-DMB, 2018 WL 944200, at *5 (N.D. Miss. Feb. 16, 2018); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004) (explaining that pursuant to Rule 26, an expert witness disclosure must "be accompanied by a written report prepared and signed by the witness."). Therefore, Drummond's expert report fails to comply with Rule 26(a)(2)(B).

The Court must now decide whether a failure to comply with the Rule 26 disclosure requirement is "substantially justified or harmless" pursuant to Rule 37(c)(1). *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir. 1996). To avoid abusing their discretion, courts must: (1) examine the importance of the witness's testimony; (2) consider the prejudice, if any, to the opposing party of allowing the witness to testify; (3) decide whether there is a possibility of curing such prejudice by granting a continuance; and (4) consider the explanation, if any, for the party's failure to comply with the discovery requirements. *Id.* at 572 (citing *Bradley v. United States*, 866 F.2d 120, 125 (5th Cir. 1989)).

With respect to the importance of Drummond's expert testimony, Allen offered the testimony on the topic of whether Allen electronically signed the retainer agreement at issue. While this factor weighs slightly in favor of allowing Drummond's testimony, the importance of the testimony "cannot singularly override the enforcement of local rules and scheduling orders." *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996) (internal citation omitted). Indeed, as set forth above, Drummond's testimony is unclear and drifts into irrelevant topics.

Next, the Court considers the prejudice to Vaksman Law of allowing Drummond's testimony. "On its face, the failure to provide any opinions, facts, or data proposed to be testified to by retained experts until well after even the discovery deadline is prejudicial." *Wilson*, 2018 WL 944200 at *5. Indeed, courts have routinely stricken opinions that go beyond those reflected in the expert report. *Avance v. Kerr–McGee Chem. LLC*, No. 5:04–cv–209, 2006 WL 4108454 (E.D. Tex. Nov. 30, 2006) (citing *Beasley v. U.S. Welding Svc., Inc.*, 129 F. App'x 901, 902 (5th Cir. 2005)). Since this issue was not fully briefed until the evening before the hearing, the Court permitted

Drummond to testify and has the benefit of comparing Drummond's testimony at the hearing to his expert report.

The Court finds that Drummond's testimony at the hearing went beyond the opinions expressed in his Rule 26 report, which is prejudicial to Vaksman Law, and weighs against allowing Drummond's testimony. Drummond explained the intricacies of network security, spoofing, cryptography, and various internet protocols; however, Drummond provided none of that information in his expert report. Allowing Drummond's testimony would prejudice Vaksman Law based on theoretical possibilities versus verifiable facts evidenced in the record. *Rembrandt Vision Tech., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) (holding an expert witness may not testify beyond the scope of the witness's expert report unless the failure to include that information in the report was "substantially justified or harmless.") (quoting FED. R. CIV. P. 37(c)(1)); *Brainard v. American Skandia Life Assur. Corp.*, 432 F.3d 655, 663 (6th. Cir. 2005) (holding the court did not abuse its discretion in excluding affidavit setting forth expert's opinion that was not included in discovery report).

Third, the Court must decide whether Allen may cure the prejudice. Since this matter is fully ripe for review, there is no possibility of curing the prejudice, and this factor weighs against allowing Drummond's testimony.

Finally, Allen provides no explanation for the failure to comply with the Rule 26 disclosure requirement. In fact, despite indicating that Drummond's expert report would be "seasonally supplemented" [158-2], no supplementation was ever provided. Thus, this factor weighs against allowing Drummond's testimony. *See Brennan's Inc. v. Dickie Brennan & Co. Inc.*, 376 F.3d 356, 375 (5th Cir. 2004) (citing *Alldread v. City of Grenada*, 988 F.2d 1425, 1435-36 (5th Cir. 1993)

(explaining that Rule 26 is "properly invoked to bar evidence when a party fails to make a required supplemental disclosure.")). Because more factors weigh against allowing Drummond's testimony, the Court concludes that the failure to comply with the Rule 26 disclosure requirement is not "substantially justified or harmless."

The remaining question is the appropriate remedy. This Court has the discretion to strike Drummond's expert report and exclude his testimony at the hearing. *Sierra Club, Lone Star Chapter*, 73 F.3d at 572. The Court finds Vaksman Law's Motion well taken, Drummond's expert report is stricken, and his testimony at the hearing is excluded.[5] *Honey-Love v. United States*, 664 F. App'x 358, 362 (5th Cir. 2016) (explaining that "under Rule 37(c), the presumptive sanction for failing to disclose a testifying expert or supply a required expert report or summary disclosures is to exclude or limit the expert's testimony unless the failure was substantially justified or harmless."); *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 379–82 (5th Cir. 1996) (affirming exclusion of expert testimony pursuant to Rules 26 and 37 where experts were timely designated but certain opinions were not timely disclosed).

Because the Court finds that Drummond's expert report is properly excluded under Rule 26 and 37 of the Federal Rules of Civil Procedure, the Court need not address Vaksman Law's argument pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert*.[6]

---

[5] As the Court is excluding both Drummond's export report and testimony, Vaksman Law's Motion for Leave to File Supplemental Submission in Support of Vaksman Law's Motion to Strike Plaintiff's Expert Designation [172] is moot.
[6] The Court notes though that even if Drummond's testimony was not excluded under Rule 37, it would not change the outcome of this case. Drummond provided no verifiable facts or data to the Court to demonstrate that Vaksman Law could not meet its burden of proof. In fact, the testimony did not assist the trier of fact. FED. R. EVID. 702 (a); An expert opinion "must be more than a conclusory assertion about ultimate legal issues." *Hayes v. Douglas Dynamics*, 8 F.3d 88, 92 (1st Cir. 1993).

## IV. ALLEN'S *ORE TENUS* MOTION TO EXCLUDE

On the morning of the hearing, Defense counsel provided Plaintiff's counsel with metadata from an email that Allen sent to Kenneth Ratley on November 18, 2010, purporting to show that Allen's IP address is the same IP address on the Adobe Audit Trail. Allen objected to the admission of this document, D-33, at the hearing and has provided supplemental briefing to the Court on this issue. *See* [170]. Allen requests that the Court exclude D-33 because the exhibit was untimely disclosed pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure. [7]

As discussed above, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The Fifth Circuit has identified four factors in determining whether a district court is within its discretion in excluding evidence under Rule 37: (1) the importance of the evidence; (2) the prejudice to the opposing party; (3) the possibility of curing such prejudice by granting an extension; and (4) the explanation for the party's failure to disclose. *Texas A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) (citation omitted). Because the importance of D-33 is self-explanatory and because there is no opportunity to cure any prejudice caused by the delay, the Court addresses only the second and fourth factors.

Turning first to the prejudice prong, Allen argues that "Vaksman Law's hail mary attempt to make a connection between Mr. Allen and the alleged IP address in question fully deprived Mr. Allen and his expert of an opportunity to investigate the authenticity of the purported document,

---

[7] At the hearing, Allen also argued that D-33 should be excluded because it is inadmissible hearsay. Because the Court finds that D-33 is properly excluded under Rule 37 of the Federal Rules of Civil Procedure, the Court need not address Allen's hearsay argument pursuant to the Federal Rules of Evidence.

making it highly prejudicial to Mr. Allen if accepted as true[.]" [170], pg. 2. In response, Vaksman Law asserts that if Allen preserved all emails related to his lawsuit, as he repeatedly testified, then Allen should have had access to this email from November 18, 2010, through February 23, 2021. The Fifth Circuit has held that "even if a document is publicly available or in the opposing party's possession, a party must still disclose it . . . *to provide notice of evidence central to its claims or defenses*." *Martino v. Kiewit N.M. Corp.*, 600 F. App'x 908, 911 (5th Cir. 2015) (emphasis added). Accordingly, a disclosure failure is not substantially justified merely because the document was in the opposing party's possession. *Id.* The delay in producing the document was prejudicial to Allen and weighs against allowing D-33.

Vaksman Law's expert, Kunkel, created the document the day of the hearing by pulling the metadata from Google in an EML file, which Kunkel defined as a standard email file containing IP address routing headers. Hearing Transcript, pg. 128:16-25. The rationale for pulling the metadata found in D-33 was to pinpoint Allen's alleged home IP address from the retainer agreement with other email correspondence between Allen and Ratley that occurred around the same time. *Id.* at 137:3-13. Although Vaksman Law submits that it was unaware of the metadata connecting Allen's IP address to the same IP address in the Adobe Audit Trail until immediately before the hearing, the Court finds such explanation insufficient to warrant the admission of D-33.

The Court takes issue with D-33's creation the day of the evidentiary hearing, which provided Allen no opportunity to consider D-33 until the day of the hearing. There is nothing that prevented Vaksman Law's expert from obtaining the metadata well in advance of the hearing and disclosing it. *Johnson v. United Parcel Serv.*, 236 F.R.D. 376, 378 (E.D. Tenn. 2006) (granting motion to exclude evidence under Rules 37 and 26 and explaining that "[t]he fact Defendant might

have been on notice since the grievances were filed with it does not excuse Plaintiff's failure to disclose"). It is also important that Vaksman Law was not relying on D-33 for impeachment purposes only, instead D-33 was being relied upon by Vaksman Law as substantive evidence to support its burden of proof. *Doe v. Belmont Univ.*, 367 F. Supp. 3d 732, 744 (M.D. Tenn. 2019) (holding it was the plaintiff's responsibility to disclose the differing document and reveal their reliance thereupon in the same manner required in any litigation based on any other key document). In addition, D-33 was produced after the parties had concluded discovery and after this Court's Order on January 19, 2021, entering an exhibit deadline for January 26, 2021. For these reasons, the Court finds Vaksman Law's failure to disclose D-33 was not substantially justified and was not harmless. Allen's request to exclude D-33 pursuant to Rule 37 is, therefore, granted.

## V. CONCLUSION

For the reasons discussed above, the Court finds that Vaksman Law met its burden of proving, by a preponderance of the evidence, that Allen electronically signed the retainer agreement.[8] Therefore, the Court concludes that Vaksman Law may enforce the arbitration agreement and compel arbitration.

When all issues raised in an action are bound by an agreement to arbitrate, the Court has discretion to dismiss the action. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Because Allen's claims must be submitted to arbitration, "retaining jurisdiction and staying the action will serve no purpose." *Id*. Accordingly, the Court will dismiss the action without prejudice.

---

[8] At the evidentiary hearing on this matter, the parties each moved for a judgment as a matter of law. Those motions were taken under advisement. As the Court is finding in favor of Vaksman Law, the motions are moot.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the parties arbitrate this matter pursuant to the arbitration clause within the signed retainer agreement.

**IT IS FURTHER ORDERED** that Vaksman Law's Motion to Exclude [148] the Testimony of Plaintiff's Expert and to Exclude Specified Proposed Exhibits of the Plaintiff, is GRANTED IN PART and DENIED IN PART.

**IT IS FURTHER ORDERED AND ADJUDGED** that Vaksman Law's Motion for Leave to File Supplemental Submission in Support of Vaksman Law's Motion to Strike Plaintiff's Expert Designation [172] is DENIED AS MOOT.

**IT IS FURTHER ORDERED AND ADJUDGED** that Allen's *ore tenus* Motion to Exclude D-33 is GRANTED.

**THIS, THE 30th DAY OF SEPTEMBER, 2021.**

_____
**TAYLOR B. McNEEL**
**UNITED STATES DISTRICT JUDGE**
